Joshua H. Haffner, SBN 188652
jhh@haffnerlawyers.com
Alfredo Torrijos, SBN 222458
at@haffnerlawyers.com
Vahan Mikayelyan, SBN 337023
vh@haffnerlawyers.com
HAFFNER LAW PC
15260 Ventura Blvd., Suite 1520
Sherman Oaks, California 91403
Tel: (213) 514-5681 / Fax: (213) 514-5682

Shaun C. Setareh, SBN 204514
shaun@setarehlaw.com
Thomas A. Segal, SBN 222791
thomas@setarehlaw.com
SETAREH LAW GROUP
420 N Camden Drive, Suite 100
Beverly Hills, CA 90210
Tel: (310) 888-7771 / Fax: (310) 888-0109

*Counsel for Plaintiff Lester Anthony Perez*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LESTER ANTHONY PEREZ,<br><br>Plaintiff,<br><br>vs.<br><br>LIBERTY MUTUAL GROUP INC., et al.,<br><br>Defendants. | Case No. 4:25-cv-08775-HSG<br><br>HON. HAYWOOD S. GILLIAM, JR.<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>Hearing</u><br>Date: April 9, 2026<br>Time: 2:00 p.m.<br>Courtroom: 2, 4th Floor |

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. RELEVANT ALLEGATIONS AND PLAN TERMS ..... 2

- A. Operative Allegations. ..... 2
- B. Key Plan Provisions. ..... 3

III. LEGAL STANDARD FOR MOTION TO DISMISS ..... 4

IV. ARGUMENT ..... 6

- A. Count I — Breach of Fiduciary Duty Survives. ..... 6
  - 1. The "No Fiduciary Conduct" Defense Fails. ..... 6
  - 2. Plaintiff Plausibly Alleges Breach of Loyalty and Prudence. ..... 9
  - 3. Plaintiff Plausibly Alleges Causation and Loss. ..... 12
- B. Count II — Anti-Inurement Claim Survives. ..... 13
- C. Count III — Prohibited Transaction Claim Survives. ..... 14
- D. Count IV — Failure-to-Monitor Claim Survives. ..... 16
- E. Leave to Amend Should Be Granted in the Alternative. ..... 17

V. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*
458 F.3d 955 (9th Cir. 2006) ........ 6

*Acosta v. Pac. Enters.*
950 F.2d 611 (9th Cir. 1991) ........ 16

*Allen v. GreatBanc Tr. Co.*
835 F.3d 670 (7th Cir. 2016) ........ 18

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ........ 4

*Bafford v. Northrop Grumman Corp.*
994 F.3d 1020 (9th Cir. 2021) ........ 5, 6, 7

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ........ 4, 12

*Chao v. Malkani*
452 F.3d 290 (4th Cir. 2006) ........ 15

*Concha v. London*
62 F.3d 1493 (9th Cir. 1995) ........ 5

*Conkright v. Frommert*
559 U.S. 506 (2010) ........ 5, 7

*Cunningham v. Cornell Univ.*
604 U.S. 693 (2025) ........ 14, 16

*Dimou v. Thermo Fisher Sci. Inc.*
2024 WL 4508450 (S.D. Cal. Sep. 19, 2024) ........ 7

*Fifth Third Bancorp v. Dudenhoeffer*
573 U.S. 409 (2014) ........ passim

*Foman v. Davis*
371 U.S. 178 (1962) ........ 17

*Hughes Aircraft Co. v. Jacobson*
525 U.S. 432 (1999) ........ 13

*Hughes v. Northwestern Univ.*
595 U.S. 170 (2022) ........ 5

*Hutchins v. HP Inc.*
2024 WL 3049456 (N.D. Cal. June 17, 2024) ........ 7

*Lockheed Corp. v. Spink*
517 U.S. 882 (1996) ........ 14

*McManus v. Clorox Co. ("Clorox II")*
2025 WL 732087 (N.D. Cal. Mar. 3, 2025) .......... 18

*NLRB v. Amax Coal Co.*
453 U.S. 322, 334 (1981) .......... 13

*Pegram v. Herdrich*
530 U.S. 211 (2000) .......... 6

*Perez-Cruet v. Qualcomm Inc.*
2024 WL 2702207 (S.D. Cal. 2024) .......... passim

*Randall v. GreatBanc Tr. Co.*
2024 WL 713997 (D. Minn. Feb. 21, 2024) .......... 15

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*
541 U.S. 1 (2004) .......... 13

*Solis v. Webb*
931 F.Supp.2d 936 (N.D. Cal. 2012) .......... 16

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001) .......... 5

*Terraza v. Safeway Inc.*
241 F.Supp.3d 1057 (N.D. Cal. 2017) .......... 5, 10

*US Airways, Inc. v. McCutchen*
569 U.S. 88 (2013) .......... 5, 7

*Wright v. Oregon Metallurgical Corp.*
360 F.3d 1090 (9th Cir. 2004) .......... 15

**Statutes**

29 U.S.C. § 1002(21)(A) .......... 6

29 U.S.C. § 1103(c)(1) .......... 13

29 U.S.C. § 1104(a)(1)(D) .......... 6

29 U.S.C. § 1106(a)(1)(D) .......... 12, 14, 15

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 2, 4, 5, 9

## I. INTRODUCTION

This case is not about forcing fiduciaries to maximize participant benefits, and it does not advance a categorical rule requiring forfeitures to always be used for plan expenses. It is about something far simpler: ERISA's core prohibition on fiduciaries using plan assets — assets held in trust for employees — in a manner that consistently and quantifiably serves the employer's interests rather than participants' exclusive interests. From 2020 through 2023, Defendant used more than $10.5 million in forfeited plan assets to reduce Liberty Mutual's future employer contribution obligations. In the same period, Defendant exercised their plan-authorized discretion to charge all administrative expenses to participants' individual accounts rather than directing the Company or Participating Employers to bear those costs. The combination of those two fiduciary choices — made every year, growing every year — presents a plausible inference of self-interested administration that ERISA's loyalty and prudence requirements prohibit. Doc. 33 ("FAC") at ¶¶ 17–19, 35–36.

Defendant's principal defense reduces to a single premise: Plan § 5.1's "shall" language mandated the forfeiture allocation, eliminating all fiduciary discretion and immunizing Defendant from ERISA scrutiny. That premise is wrong for two independent reasons. First, even accepting § 5.1's directive, it does not touch the related fiduciary decision — made under Plan §§ 13.13 and 16.1(c) — whether to charge administrative expenses to participants or to require the Company or Participating Employers to bear them. That expense-allocation decision is expressly delegated to the Plan Administrator; exercising it against participants while forfeitures flow to the employer is the fiduciary act at the heart of this case. Second, plan documents bind fiduciaries only "insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D). A plan term that mandates the use of plan assets exclusively for the employer's benefit cannot override ERISA's exclusive-purpose clause, anti-inurement prohibition, or fiduciary duty requirements.

Defendant further relies on a large volume of out-of-circuit, nonbinding district court dismissals. But the Ninth Circuit has not ruled on a single forfeiture case — *Hutchins v. HP Inc.* (No. 25-826) and *Wright v. JPMorgan Chase & Co.* (No. 25-4235) are pending before the Ninth Circuit — and the S.D. Cal. court in *Perez-Cruet v. Qualcomm Inc.* 2024 WL 2702207 (S.D. Cal. 2024) denied a nearly identical motion to dismiss. More tellingly, the Secretary of Labor's own amicus brief in *Cain v.*

*Siemens Corp.* — filed by Defendant's own amicus authority — concedes that "deciding how to allocate Plan forfeitures in accordance with the Plan terms was a fiduciary function" since it "involves a decision regarding management and control of plan assets, which is a quintessential fiduciary decision that is subject to the fiduciary duties of loyalty and prudence." Doc. 34-4 ("Cain Amicus Br.") at 8, and 13. That concession defeats the primary argument in Defendant's motion. Plaintiff's four ERISA claims are plausibly alleged and survive Rule 12(b)(6).

## II. RELEVANT ALLEGATIONS AND PLAN TERMS

### A. Operative Allegations.

Plaintiff Lester Anthony Perez is a former Liberty Mutual employee who participated in the Plan and paid administrative expenses charged to his individual account during. Doc. 33 ("FAC"), at ¶ 5. The Liberty Mutual 401(k) Plan (the "Plan") is a defined contribution, individual-account employee pension benefit plan governed by ERISA, funded by a combination of employee contributions and employer contributions from Liberty Mutual. FAC ¶¶ 6, 14. Plan assets — including all employer contributions — are held in a trust for the exclusive benefit of participants. FAC ¶ 13; 29 U.S.C. § 1103(a).

Participants vest in their employer contributions over a two-year schedule: 50% after one year of service and 100% after two years. FAC ¶ 15. An employee who separates before full vesting forfeits the unvested balance; those forfeited employer contributions remain in the Plan as Plan assets. FAC ¶ 16. Plaintiff alleges Defendant "exercise[s] control over how these Plan assets are thereafter allocated" and has "wrongfully and consistently used forfeited nonvested Plan assets for its own benefit, to reduce future employer contributions." FAC ¶¶ 16, 17. Defendant's own Form 5500 filings — sworn public disclosures — confirm this practice in each year at issue:

| Year | Employer Contributions Reduced by Forfeitures |
|---|---|
| 2020 | $1,723,615 |
| 2021 | $2,249,172 |
| 2022 | $2,769,417 |
| 2023 | $3,739,256 |

FAC ¶ 18.

Simultaneously, Plan administrative expenses were charged to participants' individual accounts. FAC ¶ 19. Plaintiff alleges Defendant "failed to engage in a reasoned and impartial decision-making process regarding use of forfeited funds" (FAC ¶ 35), that their conduct "caused the Plan to receive fewer future employer contributions than it would otherwise receive, and depleted Plan assets" (FAC ¶ 36), and that participants, including Plaintiff, paid expenses that could have been defrayed from Plan assets depending on fiduciary determinations (FAC ¶ 19).

**B. Key Plan Provisions.**

***Plan § 5.1 — Forfeiture Allocation***. Plan § 5.1 states: "All forfeitures shall be applied towards satisfying the amount of the Company Contributions for the Plan Year for which such amounts are forfeited, and for subsequent Plan Years until exhausted." Doc. 34-5 (the "Plan"), § 5.1 at ECF p. 53. Defendant treats this as a categorical immunity clause. In this opposition, § 5.1 is relevant to (i) what Defendant did with forfeitures, and (ii) whether that conduct was "consistent with the provisions of [ERISA]" within the meaning of § 1104(a)(1)(D). It does not, however, foreclose fiduciary discretion over the linked expense-allocation decision, and it cannot authorize conduct that independently violates ERISA's statutory prohibitions.

***Plan § 13.13 — Administrative Expense Discretion.*** Plan § 13.13 provides that administrative expenses "shall be paid from the Trust, in the manner prescribed by the Plan Administrator," unless otherwise paid by the Company or Participating Employer "as determined by the Plan Administrator." Doc. 34-5 (the "Plan"), § 13.13 at ECF p. 112. The provision further specifies that investment management fees "may be charged directly to a Participant's Account" "in the manner prescribed by the Plan Administrator." *Id*. This provision is the fiduciary linchpin. The Plan Administrator had express, ongoing discretion to determine: (i) how administrative expenses are paid from the Trust; (ii) whether the Company or employers pay instead; and (iii) the manner in which fees are charged to participants. Each of those decisions is a fiduciary act. Defendant exercised each of them against participants — every year.

***Plan § 16.1(c) — Participating Employer Expense Obligation.*** Plan § 16.1(c) provides that upon request of the Company or Plan Administrator, each Participating Employer "shall pay" some portion of plan expenses, as the Company determines; allocation among participating employers is

determined by the Company or Plan Administrator. Doc. 34-5 (the "Plan"), § 16.1(c) at ECF p. 118. This provision establishes a plan-authorized mechanism — triggered by fiduciary request — to shift expenses away from participant accounts and onto the participating employers. Defendant never invoked it. Their failure to do so, while simultaneously benefiting from the § 5.1 forfeiture flow, is a plausible fiduciary failure.

***Plan § 13.5 — Plenary Administrative Authority.*** The Plan Administrator "shall have such powers and duties as may be necessary to discharge its functions hereunder," including "to construe and interpret the Plan." Doc. 34-5 (the "Plan"), § 13.5(a) at ECF p. 107. This sweeping grant of discretionary authority confirms fiduciary status and subjects Defendant's administrative choices — including expense-allocation decisions under §§ 13.13 and 16.1(c) — to ERISA's loyalty and prudence requirements.

***The "Company Contribution" Definition.*** Defendant argues that applying forfeitures to "Company Contributions" benefited participants because those contributions were credited to participant accounts. MTD at 3–4, 11. Three points defeat this argument: (i) the participants who received forfeiture-funded contributions are not necessarily the same as the participants who bore the administrative expense burden; (ii) Liberty Mutual independently saved the cash it would otherwise have contributed — that corporate savings is a real, quantified benefit to the employer regardless of how the accounting entries read; and (iii) the "participants received contributions" argument does not address the loyalty concern arising from the fiduciary's simultaneous choice to charge expenses to participants under §§ 13.13 and 16.1(c).

## III. LEGAL STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint survives Rule 12(b)(6) if it contains sufficient factual allegations to state a claim to relief "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Sprewell v. Golden*

*State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

ERISA fiduciary breach cases require "careful, context-sensitive scrutiny" at the pleading stage — not categorical rules of dismissal. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). The Court must evaluate whether the specific allegations, in context, are plausible — not whether the plaintiff has proved them. *Hughes v. Northwestern Univ.*, 595 U.S. 170, 173–74 (2022). "To state a claim for breach of fiduciary duty, a complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times." *Terraza v. Safeway Inc.*, 241 F.Supp.3d 1057, 1070 (N.D. Cal. 2017). Because fiduciaries control the plan's administrative records, investment information, and decision-making minutes, "the victim of [their] misconduct will not, at the time he files his complaint, be in a position to describe with particularity the events constituting the alleged misconduct." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). The allegations are sufficient if "the court may be able to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed." *Terraza*, 241 F.Supp.3d at 1070.

Plaintiff pleads concrete conduct: Defendant used forfeitures to offset employer contributions while charging plan expenses to participants, for four consecutive years, in growing amounts confirmed by sworn public disclosures. FAC ¶¶ 18–19. Plaintiff pleads concrete harm: depleted plan assets, fewer employer contributions, and participant-borne administrative costs that forfeited assets could have covered. FAC ¶¶ 35–36. These are not speculative inferences; they are supported by Defendant's own Form 5500 filings. At Rule 12(b)(6), that is more than enough. *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).

When the Court considers plan documents at the pleading stage, ambiguities and competing reasonable interpretations must be resolved in Plaintiff's favor. Defendant asks the Court to adopt their reading of Section 5.1 as eliminating all fiduciary discretion in the Plan. But Plan Sections 13.13, 16.1(c), and 13.5 are susceptible of Plaintiff's reading — and that reading must prevail at this stage. Moreover, to the extent Defendant relies on *Conkright v. Frommert*, 559 U.S. 506 (2010), and *US Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013), for a general plan-terms-primacy principle, those cases addressed benefit claims and plan interpretation in the benefits context — not ERISA's statutory

prohibitions on fiduciary conduct. The correct principle is statutory supremacy: fiduciaries must follow plan documents only "insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D).

## IV. ARGUMENT

### A. Count I — Breach of Fiduciary Duty Survives.

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant acted in a fiduciary capacity; (2) the defendant breached a fiduciary duty; and (3) the breach resulted in harm. *Bafford*, 994 F.3d at 1026. Defendant challenges all three elements. Each challenge fails.

#### *1. The "No Fiduciary Conduct" Defense Fails.*

##### a) Threshold Fiduciary Function — the *Pegram* Standard Is Met.

Defendant argues that because Plan § 5.1 "mandated" the forfeiture allocation, no fiduciary discretion was exercised and no fiduciary act occurred. MTD at 4–6. Under *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000), the threshold question is whether the defendant was performing a "fiduciary function" when taking the challenged action. An ERISA fiduciary is any person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). Three independent grounds establish fiduciary function here.

First, Defendant exercised express, ongoing, plan-granted discretionary authority over Plan expense administration. Plan § 13.13 provides that the Plan Administrator determines "the manner" in which expenses are paid from the Trust, and whether the Company or employers pay instead. Plan § 16.1(c) provides that participating employers shall pay expenses upon fiduciary request. Plan § 13.5 grants the Plan Administrator the power necessary to administer the Plan, including construing and interpreting it. Each of these provisions delegated discretionary authority to the fiduciary — and each was exercised every year. The exercise of discretionary authority over the management and disposition of plan assets is the paradigm case of fiduciary conduct. 29 U.S.C. § 1002(21)(A)(i)–(ii); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th Cir. 2006).

Second, even as to Section 5.1 itself, administering the forfeiture allocation process involves

fiduciary discretion. The Committee must identify forfeiture events, calculate forfeited amounts, maintain suspense accounts, timing their application, and reconcile allocations consistent with the Plan as a whole — all exercises of discretionary "management" of plan assets. The court in *Dimou v. Thermo Fisher Sci. Inc.* recognized as much, holding that "although the decision to include a plan term setting forth various permissible uses for forfeitures is a settlor function, implementing that decision is a fiduciary function." 2024 WL 4508450, at *7 (S.D. Cal. Sep. 19, 2024) (quoting *Hutchins v. HP Inc.*, 2024 WL 3049456, at *5 (N.D. Cal. June 17, 2024) ("*Hutchins I*")).

Third, the Secretary of Labor's amicus brief in *Cain v. Siemens Corp.* expressly concedes that concedes that "deciding how to allocate Plan forfeitures in accordance with the Plan terms was a fiduciary function" since it "involves a decision regarding management and control of plan assets, which is a quintessential fiduciary decision that is subject to the fiduciary duties of loyalty and prudence." Doc. 34-4 ("Cain Amicus Br.") at 8, and 13. The Secretary then argues that the breach allegations were insufficient in *Cain*. But that argument goes to the merits — not the threshold fiduciary-function question. Defendant invokes the DOL's three amicus briefs throughout their motion; they cannot simultaneously rely on those briefs while ignoring the Secretary's concession that forfeiture allocation is a fiduciary act.

**b) *Bafford*'s Discretion Touchstone Is Satisfied.**

*Bafford v. Northrop Grumman Corp.* confirms that fiduciary status attaches when a party exercises "discretionary authority or control" over plan management or assets. 994 F.3d at 1026. Defendant urges the Court to read Plan § 5.1 as eliminating discretion entirely. But § 5.1 speaks only to how forfeitures are allocated — it says nothing about how administrative expenses are funded, who bears them, or in what manner they are charged. Plan Sections 13.13 and 16.1(c) expressly address those questions and expressly delegate them to the Plan Administrator. The expense-allocation decision — whether participants bear costs or whether the Company or employers do — is a recurring, economically significant, discretionary fiduciary choice. Defendant exercised that discretion every year. *Bafford*'s touchstone is satisfied.

**c) Plan-Terms-Primacy Cases Are Inapposite.**

Defendant relies on *Conkright v. Frommert*, *US Airways, Inc. v. McCutchen*, and related cases

for a general proposition that courts must follow plan documents. MTD at 5–6. Those cases addressed plan interpretation in the context of benefit claims — not ERISA's statutory prohibitions on fiduciary conduct. *Conkright* concerned the appropriate standard of review for a plan administrator's interpretive decision; *McCutchen* concerned equitable defenses to a benefits claim. Neither held that plan documents override ERISA's statutory requirements. The governing principle here is Section 1104(a)(1)(D): fiduciaries must follow plan documents only "insofar as such documents and instruments are consistent with the provisions of [ERISA]." That is a statutory supremacy command, not an equity-override. "ERISA makes clear that the duty of prudence trumps the instructions of a plan document." *Dudenhoeffer*, 573 U.S. at 421.

**d) The Out-of-Circuit Mandatory-Term Cases Are Distinguishable.**

Defendant relies primarily on *McWashington v. Nordstrom, Inc.*, *Naylor v. BAE Sys., Inc.*, and *Jacob v. RTX Corp.* for the proposition that following mandatory plan terms is not fiduciary conduct. These cases are nonbinding, out-of-circuit decisions, and they do not address this Plan's expense-discretion provisions.

*McWashington* and *Naylor* each analyzed plan language that foreclosed any alternative use of forfeitures; neither court confronted a plan with provisions like Sections 13.13 and 16.1(c) expressly delegating to the Plan Administrator discretion over expense payment and the manner of expense allocation. The fiduciary conduct challenged here is not limited to the forfeiture allocation under Section 5.1; it extends to the linked expense-allocation decision under Sections 13.13 and 16.1(c), which *McWashington* and *Naylor* did not analyze. Those decisions are therefore inapposite on the fiduciary-conduct threshold.

*Jacob* rests on a "no duty to maximize benefits" framing and a "promised benefits" shorthand that does not fit this case. The "promise" in a defined contribution plan encompasses the exclusive management of plan assets for participants" benefit — not merely the deposit of a matching contribution. And Plaintiff's theory is not about maximizing; it is about the fiduciary's decision to exercise two separate discretionary tools — Section 5.1's forfeiture direction and Sections 13.13 and 16.1(c)'s expense direction — in a combination that consistently and quantifiably benefited the employer at participants' expense. That combination, and its four-year pattern, is not addressed by

*Jacob's* "promised benefits" shorthand.

### *2. Plaintiff Plausibly Alleges Breach of Loyalty and Prudence.*

#### a) Duty of Loyalty — The "Two-Hats" Problem.

ERISA's duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries" for the "exclusive purpose" of providing benefits and defraying reasonable plan expenses. 29 U.S.C. § 1104(a)(1)(A). Fiduciaries "cannot deal with the assets of the plan in his own interest or for his own account." *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 837 (9th Cir. 2018). *Varity Corp. v. Howe*, 516 U.S. 489, 498, 506 (1996), identified the classic "two-hats" problem: an employer-affiliated fiduciary that makes plan administration decisions favoring the employer violates ERISA's loyalty mandate regardless of whether it also complies with plan terms.

Plaintiff alleges precisely this conflict. Defendant simultaneously (i) exercised their discretion under Plan §§ 13.13 and 16.1(c) to charge administrative expenses to participants' accounts, and (ii) allowed forfeited plan assets to flow to Liberty Mutual's benefit under Section 5.1. The combined effect of those two exercises of fiduciary authority: Liberty Mutual saved $10.5 million in contribution costs over four years; participants paid out-of-pocket administrative expenses that forfeited assets could have covered. FAC ¶¶ 18–19. Each year the employer-benefiting pattern grew. FAC ¶ 18. This is the two-hats loyalty problem — and it is plausibly pleaded.

Defendant asserts Plaintiff's theory is a "per se" rule that would force plans to maximize participant benefits by "always" using forfeitures for expenses. MTD at 7. That is a strawman. Plaintiff's theory is not categorical. It is contextual: where a Plan expressly gives fiduciaries discretion over how administrative expenses are funded — and those fiduciaries choose, year after year, to charge costs to participants while simultaneously flowing all forfeiture assets to the employer — that combination plausibly shows self-interested administration. A fiduciary that considered participants' interests might sometimes allocate forfeitures to employer contributions. But a fiduciary that never does otherwise, while maintaining full discretion to do so, raises a plausible inference of disloyalty. That inference is sufficient at Rule 12(b)(6). *Perez-Cruet*, 2024 WL 2702207, at *2; *Rodriguez*, 744 F.Supp.3d at 944.

The "incidental benefit" cases Defendant cite — led by *Hughes Aircraft Co. v. Jacobson*, 525

U.S. 432, 445 (1999) — do not save them. *Hughes Aircraft* involved a defined benefit plan surplus; in such plans the employer bears all investment risk and plan members have no entitlement to surplus assets. *Id*. at 439–41. This is a defined contribution plan where each participant has an individual account and bears investment risk directly. A $3.7 million benefit to the employer in a single year of a defined contribution plan — through the combined exercise of two discretionary fiduciary tools — is not incidental. See *Rodriguez*, 744 F.Supp.3d at 946-947 (distinguishing *Hughes Aircraft* in the forfeiture context because using assets to reduce future matching contributions is "a purpose other than to pay its obligations to the Plan's beneficiaries").

**b) Duty of Prudence — Process Allegations and Context-Specific Inquiry.**

ERISA's duty of prudence requires fiduciaries to act with "the care, skill, prudence, and diligence under the circumstances then prevailing" of a similarly situated prudent person. 29 U.S.C. § 1104(a)(1)(B). The Supreme Court has emphasized that this is a "context specific" inquiry that cannot be resolved categorically on a motion to dismiss. *Dudenhoeffer*, 573 U.S. at 425; *Hughes v. Northwestern Univ.*, 595 U.S. at 173–74.

Defendant cites *Dudenhoeffer* for the proposition that Plaintiff's theory is a "per se" rule. MTD at 7. But *Dudenhoeffer* is a double-edged sword. The same "context specific" inquiry that defeats per-se rules also defeats categorical dismissals. The context here — this Plan's express delegation of expense discretion, four years of growing employer-benefiting practices, and the Plan Administrator's failure to invoke Section 16.1(c) even once on participants' behalf — is precisely the kind of context that a prudent fiduciary would weigh. The FAC's allegation that Defendant "failed to engage in a reasoned and impartial decision-making process" (FAC ¶ 35) is a process-level allegation that raises a plausible inference of imprudence. *Terraza*, 241 F.Supp.3d at 1070. Plaintiff is not required to plead the specifics of the Committee's deliberations at this stage; those are in Defendant's exclusive possession. *Clorox I*I, 2025 WL 732087, at *3.

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004), confirms that ERISA fiduciaries must act "solely in the interest of the participants" as part of their core duty. *Id*. at 1093–94. That principle, applied to the context of this Plan's expense-discretion provisions, supports Plaintiff's prudence allegations.

**c) Duty to Follow Plan Terms Consistent with ERISA.**

Section 1104(a)(1)(D) requires fiduciaries to follow plan documents only "insofar as such documents and instruments are consistent with the provisions of [ERISA]." The conditional clause is not surplusage: it imposes a threshold requirement that fiduciaries evaluate whether following a plan provision would violate ERISA's substantive requirements. "ERISA makes clear that the duty of prudence trumps the instructions of a plan document." *Dudenhoeffer*, 573 U.S. at 421. Plaintiff alleges that implementing Plan § 5.1 as Defendant has done — in combination with exercising expense-allocation discretion against participants under Sections 13.13 and 16.1(c) — produces a result inconsistent with ERISA's exclusive-purpose mandate and anti-inurement clause. Whether that is so is the merits question. It cannot be resolved on a motion to dismiss.

**d) Distinguishing the Forfeiture-Merits Dismissal Cases.**

Defendant compiles a lengthy list of district court dismissals to suggest that forfeiture claims are categorically deficient. MTD at 7–9; Defs." Exs. 1–45. Several observations are in order.

First, each of these decisions is nonbinding on this Court. The Ninth Circuit has not ruled on a single forfeiture case. *Hutchins* (No. 25-826) and *Wright* (No. 25-4235) are pending before the Ninth Circuit. Dismissing this action with prejudice before the Ninth Circuit speaks would be extraordinary.

Second, *Hutchins I* and *Hutchins II* are the most influential of the cited cases and the most important to distinguish. The *Hutchins* plan contained a specific provision — not present in this Plan — reserving to the employer, as settlor, "complete and unfettered discretion" whether an expense would be paid by the company or out of the trust fund, and expressly stating that provision "shall not be construed to require" the company to pay any expenses. That explicit settlor-retention clause removed from the fiduciary — and preserved in the employer as settlor — the very expense-allocation discretion that is the fiduciary linchpin of this case. This Plan's Sections 13.13 and 16.1(c) do the opposite: they affirmatively delegate expense-allocation authority to the Plan Administrator (a fiduciary). The structural difference between the two plans is what drove the Hutchins holding, and that difference renders Hutchins inapposite.

Third, *Wright v. JPMorgan Chase* is on appeal, is nonbinding, and involved a plan whose expense structure differs from this Plan's. The *Wright* court found the plan's terms permitted paying

only the employer's share of expenses, not participants'; this Plan's Sections 13.13 and 16.1(c) give the Plan Administrator broader discretion to direct expense payment to the Company or employers upon request. Moreover, the *Wright* court's own quotation of Section 1106(a)(1)(D)'s "use ... for the benefit" language undermines its conclusion that no prohibited transaction occurred.

#### ***3. Plaintiff Plausibly Alleges Causation and Loss.***

##### **a) The Two Loss Theories Are Both Cognizable.**

ERISA imposes liability for losses "resulting from" each breach of fiduciary duty and requires fiduciaries to "make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). The loss inquiry asks what participants would have received — and what the Plan would have held — but for the breach, not where the forfeiture dollars physically resided. Plaintiff pleads two well-grounded theories of loss.

First, participants paid administrative expenses out of their individual accounts that Plan assets could have covered. FAC ¶ 19. Plan § 16.1(c) authorized the Plan Administrator to request that Participating Employers pay those expenses; Plan § 13.13 authorized the Plan Administrator to prescribe a different "manner" of paying expenses from the Trust. Had Defendant exercised either authority on participants" behalf, the administrative fees charged to individual accounts would have been lower. The difference between participants" actual account balances and the balances they would have had but for Defendant's failure to exercise that authority is a measurable, concrete loss. *Perez-Cruet*, 2024 WL 2702207, at *2. Plaintiff need not plead the exact dollar figure at this stage. *Twombly*, 550 U.S. at 570.

Second, Plaintiff alleges Defendant's conduct "caused the Plan to receive fewer future employer contributions than it would otherwise receive, and depleted Plan assets." FAC ¶ 36. Whether that theory prevails on the merits depends on facts about what Liberty Mutual would have contributed in a counterfactual world — but "facts about the world" is what discovery is for. At the pleading stage, a plausible causal chain is sufficient.

##### **b) Defendant's "Assets Stayed in the Plan" Argument Is Legally Irrelevant.**

Defendant contend Plaintiff cannot allege loss because forfeitures were "reallocated within the Plan" and because Plaintiff's theory would "force" Liberty Mutual to make additional contributions. MTD at 11–12. This argument conflates two different questions: (i) where assets physically resided,

and (ii) whether their use made participants worse off. ERISA's restoration remedy is directed at the second question. Whether the same dollars that were used to offset Liberty Mutual's contributions could instead have been used to defray the administrative expenses participants paid — reducing participant account charges — is an economic and factual question, not a legal one. The argument that "forfeitures stayed in the plan" does not resolve whether participants were harmed by the manner in which those forfeitures were applied.

**B. Count II — Anti-Inurement Claim Survives.**

ERISA § 403(c)(1) commands that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). The statute's two requirements — "never inure to the benefit of any employer" and "exclusive purposes" — each provide an independent basis for Plaintiff's claim.

Defendant argues anti-inurement requires assets to "leave" the plan. MTD at 13. That requirement is not in the statute. The text prohibits inurement "to the benefit of any employer"; it conditions that prohibition on nothing about the physical location of assets. The "assets left the plan" requirement is a judicial gloss developed in cases — primarily defined benefit surplus cases — where the assets were plainly used for participant benefit even if the employer received an indirect benefit. *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004), and *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), both addressed different statutory and factual contexts: Yates addressed who qualifies as a "participant," and Hughes Aircraft addressed a defined benefit plan's use of actuarial surplus. Neither case held that § 1103(c)(1)"s "never inure" prohibition is limited to external transfers. *NLRB v. Amax Coal Co.*, 453 U.S. 322, 334 (1981) (fiduciary must act "exclusively in the interest of plan participants").

Using Plan Assets to Satisfy an Employer Obligation Is Paradigmatic Inurement. The employer saved more than $10.5 million in contribution costs by having forfeited plan assets satisfy contribution obligations it would otherwise have funded from its own cash. FAC ¶ 41. That is a direct, quantified economic benefit to the employer — not an incidental one. Using plan assets as a substitute for the employer's own financial obligation is the most direct form of inurement possible; the employer

received a dollar-for-dollar benefit from plan assets without any corresponding contribution of its own money. Perez-Cruet, 2024 WL 2702207, at *6; Rodriguez, 744 F.Supp.3d at 946.

Section 1103(c)(1) requires that plan assets be held "for the exclusive purposes of providing benefits to participants ... and defraying reasonable expenses." "Exclusive" is not a rhetorical flourish — it means that the purposes for which plan assets are used must be exclusively participant-oriented. When plan assets are used to satisfy the employer's independent contribution obligation, they are not being used for participants" exclusive benefit, regardless of whether administrative labels treat the resulting credits as "participant contributions." The argument that forfeiture-funded employer contributions benefited participants does not address the "exclusive purposes" requirement, because the employer received an equal and independent benefit from the same transaction.

*Wright*, *Madrigal*, *Sievert*, and *Jacob* are nonbinding and misapply the statute. Each of these cases dismissed anti-inurement claims based on the "assets left the plan" gloss and the observation that forfeiture-funded contributions were credited to participant accounts. None of those cases confronted the "exclusive purposes" argument. None analyzed the interaction between the forfeiture provision and the expense-allocation discretion of Sections 13.13 and 16.1(c). And none involved the specific plan structure of this case, in which participants simultaneously bore all administrative costs while forfeitures flowed to the employer. These decisions are nonbinding, are pending circuit review, and rely on a judicial gloss that is not compelled by — and may be inconsistent with — Section 1103(c)(1)'s text. *Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025), reaffirms that ERISA's prohibited-transaction and anti-inurement provisions must be read broadly and applied rigorously to protect plan participants.

**C. Count III — Prohibited Transaction Claim Survives.**

ERISA § 406(a)(1)(D) prohibits fiduciaries from causing a plan to engage in a transaction constituting "a direct or indirect ... transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D). Section 406(b)(1) independently prohibits fiduciaries from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). Plaintiff alleges both. FAC ¶¶ 46–47.

The § 406(a)(1)(D) "Use ... for Benefit" Language Does Not Require a Physical Transfer. Defendant relies primarily on *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996), for the proposition that a

"transaction" requires transmission of assets outside the plan. *Spink* is inapposite. That case addressed a plan amendment providing early retirement benefits to employees who agreed to release legal claims — a "quid pro quo" between the employer and participants in the payment of plan benefits to participants. *Id*. at 893–95. The Supreme Court held only that such a benefit payment to participants is not a prohibited "transaction" because the plan was doing what it was designed to do: paying out benefits. *Id*. *Spink* did not hold that a fiduciary's use of plan assets to satisfy the employer's own independent financial obligation — at the expense of participant-borne costs — falls outside § 406's reach. The scenarios are categorically different.

*Chao v. Malkani*, 452 F.3d 290 (4th Cir. 2006) — another Defendant's case — addressed the return of mistaken contributions and is likewise inapposite. While *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004), addressed § 406, it is readily distinguishable. In *Wright*, the court found no "transaction" occurred where fiduciaries merely made a "lawful decision to remain in full compliance with the explicit language of the Plan's terms" by continuing to hold stock. *Id.* Here, Defendant engaged in an affirmative "transaction" by actively reallocating forfeited Plan assets to satisfy the employer's independent cash contribution obligations. None of Defendant's cited cases held that a fiduciary's active use of plan assets as a substitute for the employer's own contribution obligation falls outside Section 406.

Section 406(a)(1)(D) forecloses Defendant's argument. The provision prohibits a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D) (emphasis added). The disjunctive "or use" language cannot be read to require a physical transfer — it would render "or use" surplusage. Using plan assets (forfeitures) to offset Liberty Mutual's contribution obligations is "use ... for the benefit of a party in interest" — the employer. Liberty Mutual is a party in interest as the plan sponsor and employer. 29 U.S.C. § 1002(14). *Randall v. GreatBanc Tr. Co.*, 2024 WL 713997, at *6 (D. Minn. Feb. 21, 2024) (allegation that plan assets were used to satisfy employer's matching contribution obligations "plausibly alleges" § 1106(a)(1)(D) claim); *Perez-Cruet*, 2024 WL 2702207, at *5–6 (denying motion to dismiss § 1106 claims on analogous facts).

Section 406(b)(1) prohibits self-dealing without requiring a transfer. Section 406(b)(1) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." The

statutory focus is on the fiduciary's conflicted use of plan assets — not on whether assets departed the trust. Applying forfeited plan assets to satisfy Liberty Mutual's contribution obligations is dealing with plan assets for the employer's own benefit: the textbook § 406(b)(1) violation. The Ninth Circuit construes § 1106(b) broadly to protect plan participants. *Perez-Cruet*, 2024 WL 2702207, at *6 (citing *Acosta v. Pac. Enters.*, 950 F.2d 611, 620 (9th Cir. 1991)).

"Plan-Permitted" is not "ERISA-Permitted." Defendant and several cited cases suggest that because the Plan's terms authorized the forfeiture allocation, no prohibited transaction can exist. That reasoning inverts the statutory hierarchy. Congress enacted Section 1106 to prohibit certain transactions regardless of what plan documents say; plan terms cannot authorize what Congress has prohibited. *Dudenhoeffer*, 573 U.S. at 421; 29 U.S.C. § 1104(a)(1)(D). Whether a transaction is "plan-permitted" establishes only that the fiduciary followed the plan — it does not establish that following the plan was ERISA-compliant. *Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025), confirms that once a plaintiff plausibly alleges a Section 1106 prohibited transaction, the defendant bears the burden of establishing a statutory exemption — a question for another day.

**D. Count IV — Failure-to-Monitor Claim Survives.**

Plaintiff's failure-to-monitor claim survives derivatively, because Counts I through III each state a plausible claim, and independently, because the monitoring obligation is separately and adequately pleaded.

FAC ¶¶ 51–57 allege that Liberty Mutual had authority to appoint and monitor the Plan's fiduciaries and failed to exercise that authority to correct the ongoing fiduciary breaches alleged. A plan sponsor with appointment power has a corresponding duty to monitor the persons it appoints and to take prompt corrective action upon learning of breaches. 29 C.F.R. § 2509.75-8 (FR-17); *Solis v. Webb*, 931 F.Supp.2d 936, 953 (N.D. Cal. 2012).

Three independent grounds support the monitoring claim at the pleading stage: (1) Liberty Mutual's appointment power over the Committee is undisputed; (2) the forfeiture practice was an ongoing, four-year pattern — not a one-off event — making it more plausible that it would have been identified and corrected by adequate monitoring; and (3) Plaintiff cannot plead the specifics of Liberty Mutual's monitoring procedures because that information is in Defendant's exclusive possession. *Jacob*

*v. RTX Corp.* similarly dismissed the monitoring claim as derivative — but the derivative basis survives here, and the FAC's independent monitoring allegations provide an additional ground that *Jacob* did not address. Discovery will illuminate the monitoring structure and any failures; dismissal at this stage is unwarranted.

**E. Leave to Amend Should Be Granted in the Alternative.**

If this Court grants any portion of Defendant's motion, Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). Courts "should freely give leave when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend should be denied only in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, futility of amendment." *Id.* None of those factors is present here.

***Specific Deficiencies Can Be Cured.*** If the Court finds any deficiency regarding: (i) the extent of fiduciary discretion under Section 5.1 in light of Sections 13.13 and 16.1(c), (ii) the quantification of participants" expense-based losses, or (iii) the fiduciary decision-making structure (Committee roles, policies, and procedures), Plaintiff can address each through targeted amendment. Specifically, an amended complaint can: (a) quote and contextualize Plan §§ 5.1, 13.13, 16.1(c), and 13.5 in full; (b) plead with greater particularity the administrative expenses charged to Plaintiff's account during his participation (July 2024 to March 2025); (c) plead details about forfeiture administration during and after Plaintiff's participation, or on a continuing-practice basis; and (d) plead additional detail about the Committee's composition, appointment, and decision-making authority.

***Defendant Controls the Key Information.*** The specifics of forfeiture calculation, expense allocation, and fiduciary decision-making are in Defendant's exclusive control and are not yet available to Plaintiff. Any specificity concern this Court identifies can be cured by amendment following reasonable discovery into those records. The informational asymmetry inherent in ERISA cases strongly counsels in favor of allowing this case to proceed to at least limited discovery before dismissal with prejudice. Because facts detailing the internal investigative and decision-making process are in the sole control of the defendant, an ERISA plaintiff is not required to plead details to which they have no access prior to discovery. *See McManus v. Clorox Co. ("Clorox II")*, 2025 WL 732087, at *5 (N.D. Cal.

Mar. 3, 2025) (citing *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)).

***Ninth Circuit Guidance Is Forthcoming.*** The Ninth Circuit's rulings in *Hutchins* (No. 25-826) and *Wright* (No. 25-4235) will clarify the governing standard for forfeiture claims in this Circuit. If those rulings identify elements or pleading standards beyond what Plaintiff has pled, amendment can address any gap. Dismissal with prejudice before those rulings issue would be particularly unwarranted.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety. This case presents four plausibly pleaded ERISA claims arising from Defendant's administration of the Liberty Mutual 401(k) Plan. Defendant used more than $10.5 million in forfeited plan assets — held in trust for participants — to reduce their own corporate contribution obligations, while simultaneously exercising their plan-authorized discretion to charge administrative expenses to participants' individual accounts. The combination of those two fiduciary choices, sustained over four consecutive years in growing amounts, raises a plausible inference of the self-interested administration that ERISA's loyalty mandate, anti-inurement clause, prohibited-transaction rules, and fiduciary duty provisions were enacted to prohibit.

Defendant's motion relies on a categorical reading of Plan § 5.1 that ignores the fiduciary discretion expressly delegated by Plan §§ 13.13, 16.1(c), and 13.5; misconstrues the "no fiduciary conduct" threshold by relying on out-of-circuit dismissals that analyzed materially different plan structures; and invokes the DOL's amicus authority while ignoring the Secretary's own concession that forfeiture allocation is a fiduciary function. The Ninth Circuit has yet to rule on these questions. This case should proceed to discovery so that those questions can be answered on a full factual record.

Plaintiff respectfully requests the following relief: (i) denial of the motion to dismiss in its entirety; or, in the alternative, (iii) denial at a minimum as to Count I (breach of fiduciary duty, grounded in the Plan's expense-allocation discretion under Sections 13.13 and 16.1(c)) and Count IV (failure to monitor), which are independently sufficient to proceed to discovery regardless of the Court's ruling on Counts II and III; and (iii) leave to amend any claims this Court dismisses, so that Plaintiff may address any pleading deficiencies identified by the Court — including by pleading additional detail regarding the Plan's expense provisions, the administrative costs charged to Plaintiff's account during

his participation, the forfeiture administration process, and the fiduciary decision-making structure.

Dated: March 2, 2026

**HAFFNER LAW**

By: /s/ Alfredo Torrijos
Joshua H. Haffner
Alfredo Torrijos
Vahan Mikayelyan

**SETAREH LAW GROUP**
Shaun C. Setareh
Thomas A. Segal

*Counsel for Plaintiff Lester Anthony Perez*