United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LESTER ANTHONY PEREZ,
Plaintiff,

v.

LIBERTY MUTUAL GROUP, INC., et al.,
Defendants.

Case No. 25-cv-08775-HSG

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 34

Pending before the Court is Defendants' motion to dismiss under Rule 12(b)(6). Dkt. No. 34. The Court finds this matter appropriate for disposition without oral argument and deems it submitted. *See* Civil L.R. 7–1(b). For the reasons discussed below, the Court GRANTS the motion WITH LEAVE TO AMEND.

## I. BACKGROUND

Plaintiff Lester Anthony Perez was a participant in the Liberty Mutual 401K Plan ("the Plan"), which is a "defined contribution, individual account, employee pension benefit plan" under the Employee Retirement Income Security Act of 1974 ("ERISA"). Amended Complaint ("AC") ¶¶ 5–6. Defendant Liberty Mutual Group, Inc. is the Plan's sponsor and administers it through Defendant Liberty Mutual Retirement Committee, which was created by Liberty Mutual Group, Inc. to assist in the management of the Plan. *See id.* ¶¶ 7–8. Plaintiff alleges that both Defendants are fiduciaries of the Plan. *Id.* ¶ 9

The Plan, whose assets are held in a trust fund pursuant to 29 U.S.C. § 1103(a), is funded by a combination of employer contributions and employee contributions that are usually paid

through wage withholdings. *Id.* ¶ 14. Both types of contributions are deposited into the Plan's trust fund and become assets of the Plan once deposited. *Id.* While employee contributions vest immediately, employer contributions do not fully vest until a participant has completed two years of service. *See id.* ¶ 15 (alleging that "participants vest in 50% of employer contributions after 1 year of service, and 100% after 2 years of service"). Unvested employer contributions are forfeited if a participant has "a break in service" before they fully vest. *See id.* ¶ 16. Defendants allegedly exercise control over any forfeited employer contributions. *See id.*

Plaintiff alleges that, from 2020 through 2024, Defendants used forfeited employer contributions for their own benefit, rather than for the benefit of Plan participants as required by ERISA, by using them to offset their own future employer contributions to the Plan.[1] *See id.* ¶¶ 17–18, 36, 41. This allegedly harmed the Plan and Plan participants by reducing Defendants' overall contributions to the Plan and by causing participants to incur expenses that could have been covered with the forfeited employer contributions. *See id.* ¶¶ 19, 36.

Based on these allegations, Plaintiff filed this action on October 14, 2025, on his own behalf and on behalf of similarly situated people, asserting claims for (1) breach of fiduciary duty in violation of 29 U.S.C. § 1104(a)(1); (2) breach of ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1); (3) breach of ERISA's prohibited-transactions provision, 29 U.S.C. § 1106; and (4) failure to monitor fiduciaries. Dkt. No. 1. In the first iteration of the complaint, Plaintiff asserted these claims against Defendants and Fidelity Management Trust Company and Strategic Advisors, Inc. *See id.* However, on December 4, 2025, Plaintiff voluntarily dismissed without prejudice all claims against Fidelity Management Trust Company and Strategic Advisors, Inc. *See* Dkt. No. 15.

Soon thereafter, Plaintiff filed the Amended Complaint, in which he once again asserts claims against Defendants for (1) breach of fiduciary duty in violation of 29 U.S.C. § 1104(a)(1); (2) breach of ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1); (3) breach of ERISA's prohibited-transactions provision, 29 U.S.C. § 1106; and (4) failure to monitor fiduciaries. Dkt.

---

[1] Plaintiff's allegations suggest that Defendants were the "employer" in the context of the Plan, as he alleges that Defendants' use of forfeited employer contributions to offset future employer contributions was for their benefit. *See, e.g.*, AC ¶¶ 9, 17.

No. 33. All claims are premised on allegations that Defendants wrongfully used forfeited employer contributions to decrease their own future employer contributions to the Plan.[2] *See* AC ¶¶ 32, 41, 46, 53.

Defendants now move to dismiss all claims asserted in the AC for failure to state a claim. Dkt. No. 34 ("Mot."); Dkt. No. 41 ("Reply"). Plaintiff opposes the motion. Dkt. No. 40 ("Opp.").

## II. INCORPORATION BY REFERENCE

Defendants argue, and Plaintiff does not dispute, that the Court may consider a copy of the Plan for the purpose of resolving their motion to dismiss on the ground that Plaintiff's claims rely on the Plan's terms. *See* Mot. at 3 n.5; *see also* Dkt. No. 34–5 (copy of the Plan).

The incorporation-by-reference doctrine permits a court to "treat[] certain documents as though they are part of the complaint itself" if "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citation and internal quotation marks omitted). While a court may assume the truth of an incorporated document's contents for the purpose of resolving a motion to dismiss under Rule 12(b)(6), "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003.

Here, the Court may consider the copy of the Plan under the incorporation-by-reference doctrine because it forms the basis of Plaintiff's claims and no party disputes its authenticity. Plaintiff himself cites and relies upon the copy of the Plan filed by Defendants in his opposition. *See, e.g.*, Opp. at 3. Accordingly, the Court incorporates the copy of the Plan by reference. *See Dimou v. Thermo Fisher Sci. Inc.*, No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *7 (S.D. Cal. Sept. 19, 2024) (incorporating plan document by reference because it "forms the basis of Plaintiff's claim").

## III. MOTION TO DISMISS

### A. Legal Standard

[2] The AC contains a conclusory allegation that Defendants managed the Plan imprudently because they "permitted underperforming investments to be used in the Plan." *See* AC ¶ 21. However, none of the claims asserted in the AC are premised on it. *See id.* ¶¶ 31–54.

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and quotations omitted). Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation and quotation marks omitted).

## B. Discussion

### 1. Breach of Fiduciary Duty

"An entity is a fiduciary under ERISA to the extent it has or exercises any discretionary authority, control, or responsibility in the management or administration of an ERISA plan." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1025–26 (9th Cir. 2021) (citing 29 U.S.C. § 1002(21)(A)(i), (iii)). "An ERISA fiduciary must discharge its duties 'solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan.'" *Id.*

(quoting 29 U.S.C. § 1104(a)(1)(A)). "In doing so, a fiduciary must use 'the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Id.* (quoting 29 U.S.C. § 1104(a)(1)(B)). Additionally, a fiduciary must discharge its duties "in accordance with the documents and instruments governing the plan insofar as [they] are consistent with the provisions of [subchapter I] and subchapter III" of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D).

Plaintiff alleges that Defendants breached their fiduciary duties in violation of 29 U.S.C. §§ 1104(a)(1)(A), 1104(a)(1)(B), and 1104(a)(1)(D) by utilizing forfeited employer contributions to offset their own future employer contributions instead of using them for the benefit of Plan participants, such as by covering Plan expenses that were incurred by Plan participants. *See* AC ¶¶ 19, 32–35.

Defendants move to dismiss this claim on the grounds that (1) the use of forfeited employer contributions at issue did not involve the performance of a fiduciary function, as Section 5.1 of the Plan requires that forfeited employer contributions be applied toward future employer contributions, leaving Defendants no discretion to do otherwise; and (2) even if a fiduciary function was involved in the use of forfeited employer contributions at issue, Plaintiff does not allege a plausible breach of fiduciary duty because that use was consistent with Section 5.1 of the Plan.

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages." *Bafford*, 994 F.3d at 1026 (citing 29 U.S.C. § 1109(a)). Because "a person may be a fiduciary with respect to some actions but not others[,]" the "central question" in an action for breach of fiduciary duty is "whether [the alleged fiduciary] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 654 (9th Cir. 2019) (citation and internal quotation marks omitted). This is because for an alleged wrong by an alleged fiduciary "to be cognizable as a breach of fiduciary duty," it "must occur in connection with the performance of a

fiduciary function." *See Bafford*, 994 F.3d at 1028. Fiduciary functions are described in 29 U.S.C. § 1102(21)(A) and involve the exercise of discretionary authority or control with respect to the management or administration of the plan or the disposition of its assets.[3] *See Depot*, 915 F.3d at 653 (discussing 29 U.S.C. § 1102(21)(A)). Activities that do not "involve the requisite discretion or control[,]" such as calculating a benefit pursuant to the plan's terms, do not involve the performance of a fiduciary function and thus cannot give rise to a claim for breach of fiduciary duty under ERISA. *See Bafford*, 994 F.3d at 1028.

Here, Plaintiff alleges that Defendants acted as fiduciaries with respect to the Plan because they exercised discretionary authority and control over the management and administration of the Plan. *See* AC ¶¶ 9–10. However, Plaintiff's allegations do not raise the inference that Defendants' use of forfeited employer contributions to decrease their future employer contributions, which is the conduct that gives rise to his claim for breach of fiduciary duty, involved the performance of a fiduciary function. That is because Plaintiff does not allege that Defendants' use of forfeited employer contributions involved the exercise of discretionary authority or control. Nor could he. As Defendants point out, and Plaintiff does not dispute, Section 5.1 of the Plan *requires* that forfeited employer contributions be applied toward future employer contributions, thus leaving Defendants no discretion or control over how such forfeited amounts can be used. *See* Dkt. No. 34–5 at 51 (Section 5.1 providing: "Application of Forfeitures. All forfeitures *shall* be applied towards satisfying the amount of the Company Contributions for the Plan Year for which such amounts are forfeited, and for subsequent Plan Years until exhausted.") (emphasis added). Where, as here, the conduct giving rise to a claim for breach of fiduciary duty did not involve the requisite discretion or control to constitute a fiduciary function, the claim is subject to dismissal. *See Bafford*, 994 F.3d at 1026 (affirming the dismissal of breach

---

[3] "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

United States District Court
Northern District of California

of fiduciary claim under ERISA that was premised on calculation of benefits "according to the Plan formula" because such calculations did not "involve the requisite discretion or control to constitute a fiduciary function").

Plaintiff argues that Defendants' use of forfeited employer contributions involved the exercise of fiduciary discretion under *Bafford* because certain provisions of the Plan that do not pertain to forfeited employer contributions give Defendants discretion to perform certain tasks when managing the Plan and its assets, namely interpreting the Plan (Section 13.5(a) of the Plan), determining how expenses of administering the Plan are paid (Section 13.13 of the Plan), and requiring a participating employer to pay a part of the cost of any necessary expenses incurred with respect to the Plan (Section 16.1(c) of the Plan). *See* Opp. at 7. This argument is unavailing. As discussed above, what matters for a claim for breach of fiduciary duty is whether *the conduct that gives rise to the claim* involved the necessary discretion or control to constitute a fiduciary function. *See Depot*, 915 F.3d at 654 ("The central question is whether that person was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*.") (citation and internal quotation marks omitted, emphasis added). Here, the conduct that gives rise to Plaintiff's breach-of-fiduciary-duty claim is the use of forfeited employer contributions to offset future employer contributions, which is governed by Section 5.1 of the Plan. The claim is not premised on Defendants' exercise of discretion under the other provisions of the Plan that he cites in his opposition, which do not address forfeited employer contributions. Accordingly, those other provisions of the Plan are irrelevant.

Plaintiff also argues that Section 5.1 of the Plan "involves fiduciary discretion" because, to carry out that provision, Defendants had to perform tasks such as calculating forfeited amounts. *See* Opp. at 6–7. This argument fails. Plaintiff has not alleged any facts indicating that Defendants had to perform the tasks he identifies in his opposition. But even if he had alleged such facts, it would not matter because *Bafford* holds that activities like making calculations pursuant to the terms of a plan are ministerial functions that do not "have a fiduciary duty attached to" them. *See Bafford*, 994 F.3d at 1028 (holding that "calculation of pension benefits is a ministerial function that does not have a fiduciary duty attached to it").

Finally, the authorities that Plaintiff cites for the proposition that decisions about how to allocate forfeited employer contributions necessarily involve a fiduciary function are inapposite. In those cases, the relevant plan terms gave the alleged fiduciary discretion to allocate forfeitures in multiple permissible ways. *See Dimou v. Thermo Fisher Sci. Inc.*, No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *1, 8 (S.D. Cal. Sept. 19, 2024) (noting that the "Fiduciary Defendants exercise discretionary authority over how these forfeitures are reallocated" because the plan "authorized various permissible uses of forfeitures"); *Cain v. Siemens Corp.*, No. CV 24-8730, 2025 WL 2172684, at *2, 4 (D.N.J. July 31, 2025) (holding that decision to reallocate forfeitures was a fiduciary act because the "Plan Document provides that Defendant can use the Forfeitures to either (1) pay up to $1,500,000 of annual administrative expenses of the Plan, other than expenses paid for by monthly charges to participants' accounts, or (2) to reduce the company's contributions to the Plan"); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 940–41 (N.D. Cal. 2024) ("Under the express terms of the Plan, forfeited nonvested accounts may be used to either pay administrative expenses or reduce Intuit's matching contributions."). Here, by contrast, Section 5.1 of the Plan *requires* that forfeited employer contributions be applied toward future employer contributions and does not permit other uses of those funds.

And even if Defendants' alleged use of forfeited employer contributions to offset future employer contributions involved a fiduciary function, Plaintiff's claim for breach of fiduciary duty would still fail, because Plaintiff does not allege that Defendants' use of the forfeited employer contributions in the manner alleged in the AC deprived him of any benefits promised under the Plan or violated the terms of the Plan. "ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA." *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004); *see also* 29 U.S.C. § 1104(a)(1)(D). "ERISA does no more than protect the benefits which are due to an employee under a plan." *Id.* (citation and internal quotation marks omitted). It "does not create an exclusive duty to maximize pecuniary benefits." *See id.* (citation and internal quotation marks omitted). Thus, "the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits" in accordance with the terms of the Plan. *See Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 924 (N.D. Cal. 2025).

United States District Court
Northern District of California

Here, Plaintiff does not allege that Defendants' use of forfeited employer contributions to offset future employer contributions violated any term of the Plan, or that it caused him to receive fewer benefits than he was owed under the terms of the Plan. To the contrary, his allegations and the Plan as incorporated by reference support the conclusion (1) that participants who did not serve as employees for at least two years had no right to unvested employer contributions under the terms of the Plan (as such unvested contributions were forfeited), and (2) that Defendants' use of forfeited employer contributions to offset future employer contributions was consistent with Section 5.1 of the Plan. Because Plaintiff's allegations indicate that Defendants' use of forfeited employer contributions complied with the terms of the Plan, and Plaintiff does not allege that the Plan's terms were inconsistent with ERISA, he fails to state a claim for breach of fiduciary duty arising from the use of the forfeitures at issue. *See Wright*, 360 F.3d at 1100 (holding that the plaintiffs failed to state a claim for violations of 29 U.S.C. § 1104(a)(1)(A) because their allegations showed that the defendants "complied with the Plan's lawful terms and were under no legal obligation to deviate from those terms"); *see also Hernandez v. AT&T Servs., Inc.*, No. 2:25-CV-00676-ODW (PVCX), 2025 WL 3208360, at *4 (C.D. Cal. Nov. 14, 2025) (dismissing claim for breach of fiduciary duty under ERISA for failure to state a claim because the plaintiff "does not allege that any Plan participant has not received the benefits promised under the Plan" and "identifies no Plan term that [the defendant] violated by applying forfeitures to offset employer contributions").

The non-binding authorities that Plaintiff cites for the proposition that Defendants' use of forfeited employer contributions to offset future employer contributions was a breach of fiduciary duty are distinguishable. In *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d at 944, 946, the court held that the plaintiff stated a claim for breach of fiduciary duty because she alleged that the fiduciary violated the plan's terms by using forfeitures to offset types of employer contributions that the fiduciary did not have discretion to offset. *See id.* (holding that plaintiff stated a claim for breach of fiduciary duty under ERISA because she "plausibly alleged that the Plan did not authorize the specific decisions made by Intuit with respect to the use of forfeited Matching Contributions," as the plan permitted the use of forfeited funds to offset employer contributions only if they were

United States District Court
Northern District of California

"Safe Harbor Matching Contributions" and "Profit Sharing Contributions," but the defendant allegedly used the forfeitures to offset other types of employer contributions). Here, as noted, Plaintiff does not allege that Defendants' use of the forfeitures at issue violated the Plan's terms. In *Perez-Cruet v. Qualcomm Inc.*, No. 23-CV-1890-BEN (MMP), 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024), the court held that the plaintiff stated a claim for breach of fiduciary duty because he alleged that the plan gave discretion to the fiduciary to use forfeitures to reduce employer contributions or to pay administrative expenses, and the fiduciary exercised that discretion only to reduce employer contributions. Here, pursuant to Section 5.1 of the Plan, Defendants did not have discretion to use forfeited employer contributions for any purpose other than to offset future employer contributions.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim for breach of fiduciary duty.

**2. Failure to Monitor Fiduciaries**

An ERISA fiduciary is required to "review the performance of its appointees at reasonable intervals in such a manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards." *In re Calpine Corp*., No. C-03-1685 SBA, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005) (citing 29 C.F.R. § 2509.75–8).

Plaintiff alleges that Defendants had a duty to monitor the "person(s)" to whom they delegated fiduciary responsibilities, and that they breached that duty because forfeited employer contributions were used wrongfully to offset future employer contributions. *See* AC ¶¶ 50–54.

Defendants argue that this claim fails because it is derivative of Plaintiff's claim for breach of fiduciary duty, which is subject to dismissal. Defendants also contend that the claim is subject to dismissal because Plaintiff has not alleged the identity of the persons or entities to whom Defendants delegated fiduciary responsibilities or alleged any non-conclusory facts showing that either Defendant had a duty to monitor any such persons or entities.

The Court agrees with Defendants. This claim is subject to dismissal because Plaintiff's allegations do not raise the inference that Defendants had the duty to monitor any appointed fiduciary, as he does not allege that Defendants delegated their fiduciary responsibilities to any

other person or entity. *See generally* AC. Defendants are the only fiduciaries identified in the AC. *See* AC ¶ 9 (alleging that "Defendants Liberty Mutual Group, Inc. and Liberty Mutual Retirement Committee administer the Plan, and are fiduciaries of the Plan"); *id.* ¶ 10 (alleging that "Defendants each exercised discretionary authority and/or control over the management and/or administration of the Plan and are fiduciaries of the Plan"). The claim fails for the additional reason that it is derivative of Plaintiff's claim for breach of fiduciary duty, as it is based on the use of forfeited employer contributions to offset future employer contributions. For the reasons discussed in the preceding section of this order, that conduct does not give rise to a plausible breach of fiduciary duty. *See Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *7 (N.D. Cal. Oct. 5, 2020) (dismissing failure-to-monitor claim because it was derivative of a breach-of-fiduciary-duty claim that was dismissed).

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's failure-to-monitor claim.

**3. Violation of ERISA's Anti-Inurement Provision**

ERISA's anti-inurement provision provides, with enumerated exceptions not at issue here, that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). "The purpose of the anti-inurement provision, in common with ERISA's other fiduciary responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 23 (2004). The provision "demands only that plan assets be held for supplying benefits to plan participants." *Id.* at 22.

Plaintiff alleges that Defendants violated the anti-inurement provision by using forfeited employer contributions to reduce their future employer contributions, as doing so benefitted them by reducing their overall contributions to the Plan. *See* AC ¶¶ 17, 38–42.

Defendants argue that this claim is subject to dismissal because Plaintiff's allegations indicate that the forfeited employer contributions at issue were held in the Plan at all relevant

times for the purpose of providing pension benefits to Plan participants and were merely reallocated within the Plan as future employer contributions.

The Court agrees. The Supreme Court has held that the anti-inurement provision "focuses exclusively on whether fund assets were used to pay pension benefits to plan participants[.]" *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999). Accordingly, if plan assets were used by the defendant for the "sole purpose of paying pension benefits to Plan participants," then the defendant "could not have violated the anti-inurement provision under ERISA § 403(c)(1)." *See id.* at 443 (holding that because "respondents do not allege that Hughes used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries, Hughes could not have violated the anti-inurement provision under ERISA § 403(c)(1)").

Here, Plaintiff's allegations support the conclusion that the forfeited employer contributions at issue were Plan assets both before and after Defendants used them to reduce their future employer contributions.[4] *See* AC ¶¶ 6, 14–19. That is because, once the forfeitures were used to cover future employer contributions, the forfeitures remained Plan assets in the form of new employer contributions. *See id.* Because forfeited employer contributions were Plan assets held for the purpose of paying pension benefits to Plan participants at all relevant times, Defendants' use of the forfeitures at issue was not a violation of the anti-inurement provision, even if such use incidentally benefitted Defendants by reducing their overall employer contributions to the Plan. *See Hughes Aircraft*, 525 U.S. at 442–43; *see also Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 866 (N.D. Cal. 2024) (holding that the use of forfeited employer contributions to offset employer contributions "is not a violation of the anti-inurement provision because the forfeited amounts are plan assets which do not leave the Plan trust fund and are used to pay pension benefits to Plan participants" and "the benefit that [the employer] receives is incidental to the payment of pension benefits"); *Sievert v. Knight-Swift Transportation Holdings, Inc.*, 780 F. Supp. 3d 870, 880 (D. Ariz. 2025) (same).

[4] Plaintiff does not argue otherwise in his opposition. *See generally* Opp.

Plaintiff has not cited any authority that compels a different conclusion. Plaintiff argues that *Cunningham v. Cornell Univ.*, 604 U.S. 693, 695–96 (2025) "reaffirms" that the anti-inurement provision "must be read broadly and applied rigorously to protect plan participants." Opp. at 14. However, *Cunningham* does not address the anti-inurement provision. *See id.* (addressing ERISA's prohibited-transactions provision, 29 U.S.C. § 1106). Plaintiff also cites *Rodriguez*, 744 F. Supp. 3d at 944, for the proposition that Defendants' use of forfeited employer contributions to offset future employer contributions violated the anti-inurement provision. But that case is both non-binding and distinguishable. There, the court held that the plaintiff stated a claim under the anti-inurement provision because she plausibly alleged that the defendant had used forfeited employer contributions to offset future employer contributions in a manner that violated the terms of the plan. *See id.* at 944, 946. Here, Plaintiff does not allege that Defendants' alleged use of the forfeitures at issue violated the terms of the Plan.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim for violations of the anti-inurement provision.

**4. Violation of ERISA's Prohibited-Transactions Provision**

ERISA provides that, subject to certain enumerated exceptions not at issue here, a fiduciary "shall not cause the plan to engage in" certain prohibited transactions, which include transactions that the fiduciary knows or should know constitute a direct or indirect "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]" *See* 29 U.S.C. § 1106(a)(1)(D). ERISA defines "party in interest" to include a fiduciary, a person providing services to the plan, and an employer whose employees are covered by the plan. *See* 29 U.S.C. § 1002(14). ERISA also provides that a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account." *See* 29 U.S.C. § 1106(b)(1).

Plaintiff alleges that Defendants violated § 1106(a)(1)(D) and § 1106(b)(1) by using forfeited employer contributions to decrease their future employer contributions, which benefitted them by reducing their overall contributions to the Plan. *See* AC ¶¶ 43–49.

Defendants argue that this claim is subject to dismissal because forfeiture allocations are not prohibited "transactions" under 29 U.S.C. § 1106.

The Court agrees. Defendants' alleged use of forfeited employer contributions to reduce future employer contributions was not a "transaction" under § 1106 and, as such, cannot give rise to a claim for violations of that statute. "Congress enacted [§ 1106] 'to bar categorically a transaction that [is] likely to injure the pension plan.'" *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996) (quoting *Commissioner v. Keystone Consol. Industries, Inc.*, 508 U.S. 152, 160 (1993)). The types of "transactions" prohibited under § 1106 are "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length" and "generally involve uses of plan assets that are potentially harmful to the plan." *See id.* at 893. "[A] plan administrator's payment of benefits to plan participants and beneficiaries pursuant to the terms of an otherwise lawful plan is wholly outside the scope of [§ 1106]." *Id.* at 892.

Here, Plaintiff does not allege facts showing that Defendants' use of forfeited employer contributions to offset future employer contributions was a "commercial bargain" that presented a special risk of plan underfunding or that involved uses of Plan assets that were "potentially harmful" to the Plan. Instead, his allegations and the Plan as incorporated by reference support the conclusion that Defendants' use of the forfeitures at issue (1) was for the benefit of Plan participants because the forfeitures became new employer contributions, which are Plan assets held for the purpose of paying pension benefits to Plan participants; and (2) was consistent with Section 5.1 of the Plan, which required that forfeitures be used to offset future employer contributions.[5] Thus, the Court cannot reasonably infer that the use of the forfeitures at issue was a prohibited "transaction" under § 1106. *See Lockheed*, 517 U.S.C. at 892 ("a plan administrator's payment of benefits to plan participants and beneficiaries pursuant to the terms of an otherwise lawful plan is wholly outside the scope of [§ 1106]"); *see also Wright*, 360 F.3d at 1096, 1101 (holding that fiduciaries' decision to hold company stock in the plan despite participants' demand to sell it was not a transaction under § 1106 because it was a "decision to remain in full compliance with the explicit language of the Plan's terms"); *Dimou*, 2024 WL 4508450, at *11

[5] As noted, Plaintiff does not allege that the terms of the Plan were inconsistent with ERISA.

("An intra-plan transaction, like forfeiture reallocation, is unlike a sale or leasing of property to a third-party" and is, therefore, not a prohibited "transaction" under § 1106); *Brown v. Peco Foods, Inc.*, 812 F. Supp. 3d 664, 676 (S.D. Miss. 2025) (noting that "the majority of courts considering the issue" of whether the use of forfeited employer contributions to offset future employer contributions violates § 1106 "are in agreement" that the use of forfeitures for that purpose is not a prohibited "transaction" under § 1106) (collecting authorities).

Plaintiff's cited authorities do not support a different conclusion. Plaintiff cites *Cunningham*, 604 U.S. at 693, for the proposition that "once a plaintiff plausibly alleges a Section 1106 prohibited transaction, the defendant bears the burden of establishing a statutory exemption" as an affirmative defense. *See* Mot. at 16; *see also Cunningham*, 604 U.S. at 709 (holding that "plaintiffs seeking to state a § 1106(a)(1)(C) claim must plausibly allege that a plan fiduciary engaged in a transaction proscribed therein" and "are not required to plead and prove that the myriad § 1108 exemptions pose no barrier to ultimate relief"). This argument misses the point. Because Plaintiff has not plausibly alleged a prohibited transaction under § 1106 for the reasons discussed above, it is irrelevant whether Defendants can establish a statutory exemption as an affirmative defense. Plaintiff also cites *Randall on behalf of Wells Fargo & Co. 401(k) Plan v. GreatBanc Tr. Co.*, No. 22-CV-2354 (ECT/DJF), 2024 WL 713997, at *6, 8 (D. Minn. Feb. 21, 2024). That case is distinguishable. There, the court held that the plaintiff had stated a claim for violations of § 1106 because he alleged that the fiduciary had reclassified preferred stock dividends held as plan assets to offset its employer contributions even though such use was not consistent with the plan's terms. *See id.* Here, by contrast, Section 5.1 not only authorizes the use of forfeited employer contributions to offset future employer contributions, but *requires* it.

The Court therefore GRANTS Defendants' motion to dismiss Plaintiff's claim for violations of § 1106.

//

//

//

//

United States District Court
Northern District of California

## IV. CONCLUSION

The Court GRANTS Defendants' motion to dismiss. The Court is skeptical that Plaintiff can cure the defects discussed above by amending the complaint because his theory with respect to Defendants' alleged use of forfeited employer contributions to offset future employer contributions appears to fail as a matter of law. However, because the Court cannot definitively conclude that amendment would be futile at this juncture, the dismissal is WITH LEAVE TO AMEND. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (citation and internal quotation marks omitted).

If Plaintiff chooses to amend, the amended complaint must be filed within 21 days and may not add any new defendants or claims. Plaintiff shall file a redline comparing the AC to the new complaint.

**IT IS SO ORDERED.**

Dated: September 15, 2026

HAYWOOD S. GILLIAM, JR.
United States District Judge